UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL LEE HUNTER,

                Plaintiff,

v.                                                                Case No. 18-cv-1500-pp

WARDEN MICHAEL MEISNER, *et al.*,

                Defendants.

**ORDER SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1) AND DENYING WITHOUT PREJUDICE MOTION TO APPOINT COUNSEL (DKT. NO. 3)**

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at the Redgranite Correctional Institution. Dkt. No. 1. The plaintiff has paid the filing fee in full. This decision and order screens the plaintiff's complaint.

**I.    PROCEDURAL HISTORY**

The plaintiff filed his complaint on September 24, 2018, dkt. no. 1, and paid the full $400 filing fee at the same time. The court did not receive his magistrate judge consent form until October 1, 2018. Dkt. No. 2. On November 19, 2018, the court received a motion from the plaintiff, asking that the court appoint him a lawyer. Dkt. No. 3.

Because of the court's case load and trial schedule, the court did not promptly review the plaintiff's complaint. That is entirely the court's fault, and the court regrets the delay. That meant that the plaintiff repeatedly asked the court for the status of his case. On February 5, 2019, the court received a letter in which the plaintiff asked if there was anything he should be doing.

1

Dkt. No. 4. The clerk of court responded by telling him that his complaint had to go through a screening process, but that the clerk's office couldn't tell the plaintiff how long that would take. Dkt. No. 4-1. On June 28, 2019, the court received another request, asking if the plaintiff should be doing anything. Dkt. No. 5. He sent a third request on July 31, 2019, this time asking for confirmation that the court was receiving his documents. Dkt. No. 6. The court greatly regrets that it did not promptly respond to these requests, all of which the court received.

On January 15, 2020, a local attorney, Nathanial Cade, wrote to the court, explaining that the plaintiff had asked Attorney Cade for representation. Dkt. No. 7. Attorney Cade explained that the plaintiff had told Attorney Cade that there was a videotape that would verify the plaintiff's claim that he'd been assaulted at the prison, but that when the plaintiff had asked for the video, the prison had rebuffed him. Attorney Cade noted that it would be hard for any lawyer to decide whether to represent the plaintiff without seeing whether such a video existed and, if so, what it showed. Id. He also reminded the court that the plaintiff's case had been "on hold." Id. He asked that either the court request that the videotape be produced, or that it appoint him for the limited purpose of obtaining the videotape for review. Id.

On January 17, 2020, this court signed an order agreeing to appoint Attorney Cade for the limited purpose of obtaining and reviewing the video, if the plaintiff returned the limited representation agreement. Dkt. No. 8. Once the plaintiff signed the agreement, dkt. no. 12, Mr. Cade filed a motion for discovery, asking the Department of Corrections to either produce the videotape or certify that no such video existed. Dkt. No. 10. The court granted that motion on January 27, 2020. Dkt. No. 11.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. Regardless of fee status, the PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations.

Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. Facts Alleged in the Complaint

The plaintiff is an inmate at Redgranite. Dkt. No. 1 at 1. He has sued Warden Michael Meisner, Kelly Muski, Sergeant Walker, Correctional Officer Muihalski, Sergeant Wilcox and Captain Wesner. Id. He alleges that the defendants were deliberately indifferent to his safety when they did nothing to protect him from his cellmate and that the defendants violated his due process rights. Id. at 2.

The plaintiff asserts that each of the six defendants knew that he was "having problems" with his cellmate, Donald D. Patterson. Id. He alleges that he "filed many requests" asking defendant Muski to move him out of his cell, away from Patterson, "to no avail." Id. The plaintiff explains that on December 6, 2017, Patterson severely beat him, knocked him unconscious and almost killed him. Id. The plaintiff says that as he was lying unconscious on the floor, Patterson kicked him in the face. Id. at 2. He asserts that Muihalski was there when it happened and did nothing to stop it. Id. The plaintiff says that he suffered injuries as a result. Id.

The plaintiff attached several documents to the complaint that flesh out his allegations. There is an Interview/Information Request dated March 25, 2017, addressed to "Ms. Muske," in which the plaintiff indicates, "Me and my celly are not getting along at all. It is like walking on eggshells. Please help."

Dkt. No. 1-1 at 7-8. There is another Interview/Information Request dated April 12, 2017, addressed to "Kelly Muske," which reads, "Ms. K. Muske again I am asking you to please move me, my celly is always mad at me, keeps threaten me. I fear for my life, Thank you!" Id. at 11-12. The staff response, signed by K. Muski, states, "I do not accommodate roommate requests. Sorry." Id. A third Interview/Information Request is dated May 11, 2017, and addressed to "Muski": "Ms. Muski I just talked to you about all the request slips I sent to you, you told me if they are hard to read you will toss them in the trash. You also told me that you are not making any moves." Id. at 9-10.

On August 19, 2017, the plaintiff signed an Inmate Complaint form, asserting that he was subject to non-stop verbal abuse from his cellmate and that it was like walking on eggshells all the time. Id. at 1. He stated that he'd written to Ms. Muski "4-5 times" telling her that he and his cellmate didn't get along and asking to be moved. Id. The complaint indicated that Muski never responded, and that when he asked her about it, she said if she couldn't read a request, she tossed it out and that he needed to get along with his cellmate. Id. The plaintiff further complains that Sergeant Walker had told him to tell the unit security director that his cellmate had told him that the cellmate would hit the plaintiff in the head with a cribbage board while the plaintiff slept. Id. The plaintiff said he just wanted to be moved before someone got hurt. Id.

On December 11, 2017, the plaintiff submitted an Interview/Information Request addressed to "Inmate Complaints," asking for a copy of his inmate complaint; someone responded that he needed to provide the complaint number. Id. at 3-4. The plaintiff filed another Interview/Information Request on December 14, 2017, addressed, "Inmate Complaints/Bein," indicating that he needed a copy of complaints relating to his cellmate; he stated that he'd sent

5

complaints "back in Aug." and never got a response. Id. at 5-6. Someone responded in the staff box, "No complaints on record from you in 2017." Id. at 5. On December 17, 2017, the plaintiff addressed an Interview/Information Request to defendant Captain Wesner, "RGCI/Security." Id. at 13-14. It is hard to read this request, but it appears to read, "I would like a copy of the incident report and photos regarding the battery I just sustained by the attack [illegible] by my cellmate. I am [illegible—possibly "sending] an open [illegible] disbursement to cover the cost. Thank you." Id. at 13.

Finally, the plaintiff attached two photos of a man—presumably himself—sitting between two individuals wearing gloves and holding a white towel to his head. Id. at 15-16. The man's face is severely bruised and bloodied; there is blood on the towel and on his clothes. One eyelid is bruised almost black and swollen shut. Id.

For relief, he seeks monetary damages and injunctive relief ordering that the defendants be "retrained" to make sure nothing like this happens again. Dkt. No. 1 at 4.

### B. Legal Analysis of Alleged Facts

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Brown v. Budz, 398 F.3d 904, 909 (7th

6

Cir. 2005) (internal citations omitted). This duty requires prison officials "to protect prisoners from violence at the hands of other prisoners." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). To state a failure-to-protect claim, the plaintiff must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the defendant acted with "deliberate indifference" to that risk. Id. Prison officials are deliberately indifferent when they are subjectively aware of the substantial risk of serious harm but consciously disregarded it. Id.

The plaintiff has stated sufficient facts to support an Eighth Amendment failure-to-protect claim against Muski. The court does not know what Muski's job was at the prison, or whether she had the authority to order the plaintiff moved from one cell to another. But the evidence the plaintiff has submitted shows that he told Muski that his cellmate had threatened him and that he feared for his life, and that Muski simply responded that she didn't accommodate roommate requests. The plaintiff has alleged that this same cellmate severely beat him several months later. This is enough for the court to allow the plaintiff to proceed against Kelly Muski.

The plaintiff alleges that during the beating—in fact, while he was on the floor of his cell unconscious—his cellmate kicked him in the face. He says that Muihalski was present when this happened, and did nothing to stop it. It's not clear how the plaintiff knows that Muihalski was there and did nothing—perhaps he was told later. But at this early stage, this allegation is sufficient to state a failure-to-protect claim against Muihalski.

The plaintiff says that he told Walker that his cellmate had threatened to hit him over the head with a cribbage board while the plaintiff was asleep, and that Walker just told him to tell the unit security director. The plaintiff does not

7

say when he talked to Walker, or what Walker's role at the prison was. But this allegation is sufficient to state a claim that Walker failed to protect the plaintiff.

The court cannot conclude that the plaintiff has stated a claim against Wesner. While the plaintiff wrote an Information/Interview Request to Wesner, the date on that request is ten days *after* the plaintiff says his cellmate attacked him. Although the court cannot read the entire request, it appears that the plaintiff was asking Wesner for a copy of the incident report and photos relating to the attack. The plaintiff does not allege that Wesner knew of the plaintiff's concerns about his cellmate before the attack, or that Wesner failed to protect him before the attack occurred. The court will dismiss Wesner as a defendant.

The court also will dismiss Meisner and Wilcox as defendants. The only allegations the plaintiff makes against Meisner and Wilcox is that they, and the other defendants, "knew" that he was having problems with his cellmate but did nothing, and that they did not take his concerns seriously. He doesn't explain how Miesner or Wilcox knew about his troubles with his cellmate. Conclusory allegations are insufficient to state a claim for a civil rights violation.

The plaintiff also alleged that the defendants violated his right to due process under the Fourteenth Amendment, but the facts he has alleged do not support a Fourteenth Amendment claim. He does not allege that he was punished without process or disciplined without process. His claims fall squarely into the ambit of the Eighth Amendment.

III.  **MOTION TO APPOINT COUNSEL (DKT. NO. 3)**

The plaintiff has asked the court to appoint a lawyer for him because the attack by his cellmate left him with severe injuries to his head. Dkt. No. 3. He

8

says he's lost most of his motor skills, and suffers from attention deficit, memory loss and an injury to his right eye which may leave him blind in that eye. He has no funds to hire a lawyer, he says, and does not have any legal skills. Id.

A court has discretion in a civil case to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915€; Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-87 (7th Cir. 2013). First, the plaintiff must make reasonable efforts to hire a lawyer on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, in this district, a plaintiff must contact at least three lawyers in an effort to find a lawyer without the court's help. He then must provide the court with the names of the layers he contacted as well as the dates he contact them and copies of any letters they sent to the plaintiff in response to his request for representation.

After the plaintiff demonstrates that he has made those efforts, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

9

The record shows that the plaintiff already has made efforts to try to find a lawyer on his own. He contacted Attorney Cade, who now is helping him find out whether there is a video record of the December 6, 2017 attack. Whether the video exists, and what it shows if it does exist, may impact whether a lawyer is willing to take on the plaintiff's case. Given that, the court is going to deny the plaintiff's motion *without prejudice* right now. The court next will require the defendants to answer or otherwise respond to the complaint. If, by the time the defendants have responded, the plaintiff does not have a lawyer, he may renew his request for counsel and the court will further consider whether to appoint someone to represent him.

## IV. CONCLUSION

The court **DISMISSES** Wesner, Meisner and Wilcox as defendants.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 3.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Muski, Muihalski and Walker. The court **ORDERS** Muski, Muihalski and Walker to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for all pretrial proceedings

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 25th day of February, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**